RALPH A. HORTON, *Appellant*, v. W. C. KYLE, A. B. LOWE AND R. O. WATSON, AS THE BOARD OF SUPERVISORS OF NAPOLEON B. BROWARD DRAINAGE DISTRICT, AND W. O. BERRYHILL, AS TAX COLLECTOR OF BROWARD COUNTY, FLORIDA, *Appellees.*

Opinion Filed March 8, 1921.

Petition for Rehearing Denied May 12, 1921.

1. Where the legislative journals show that sixty days did not intervene between the date of the proclamation of the Governor calling an extra session of the Legislature, and the date of its adjournment, there can be no presumption that notice of intention to apply for the passage of a local or special bill was published in the locality where the matter or thing to be affected was situated and proof thereof established in the Legislature as required by the Constitution.

2. Where only twenty-two days elapsed between the date of the proclamation of the Governor calling the Legislature in extra session and the date of its adjournment, there is no presumption that the constitutional notice required before a local or special bill can be passed was given, and where it is sought to pass a local or special act at such an extra session without establishing in the Legislature proof of the publication of the notice, such an act is unconstitutional and void as not having passed the Legislature.

3. It is not competent for the Legislature, by subsequent proceedings, to validate an act that was never passed in the Legislature in accordance with the requirements of the Constitution.

An Appeal from the Circuit Court for Broward County; E. B. Donnell, Judge.

Decree reversed.

*Hudson, Wolfe & Cason,* for Appellant;

*Glenn Terrell, Atkinson & Burdine,* for Appellees.

Browne, C. J.—This is an appeal from an order denying a temporary restraining order and dismissing a bill for injunction, whereby it was sought to restrain the collection of a drainage tax levied and assessed under the provisions of Chapter 7758, Laws of Florida, passed at the extra session of the Legislature, which convened on the 25th day of November, 1918.

The bill charges that Chapter 7758 is a special or local law, and is unconstitutional and void, because it was not established in the Legislature that notice of intention to apply for the passage of such local or special bill was published in the locality where the matter or thing affected was situated, at least sixty days prior to the introduction into the Legislature of such bill; it further alleges that "the Journal of the House of Representatives of the State of Florida, which sets forth the doings and proceedings of the said House of Representatives in the special session aforesaid, shows upon its face affirmatively that no such notice was given, in that the said Journal shows that the said extraordinary session of the Legislature was convened in pursuance of a proclamation of the Governor of the State of Florida, of date November 15th, 1918, and that your orator charges that the said Journal shows that there was not sufficient time intervening between the date of the issuance of the said proclamation and the date of the passage of the said local or special law to have given the said notice as is required by the Constitution of the State of Florida, and your orator charges that the said showing upon the face of the Journal of the said House of Representatives is an

affirmative showing that no such notice was given and that the said local or special law was not passed in accordance with the provisions of the Constitution of the State of Florida."

The legislative journals show that the Legislature convened in extra session on the 25th day of November, 1918, and that the proclamation of the Governor calling this extra session was made on the 15th of November, 1918. Chapter 7758 of the Laws of Florida, the constitutionality of which is assailed in this proceeding, was passed at this extra session.

Section 21, Art. III of the Constitution of Florida, provides: "In all cases enumerated in the preceding section all laws shall be general and of uniform operation throughout the State, but in all cases not enumerated or excepted in that section the legislature may pass special or local laws; provided, that no local or special bill shall be passed unless notice of the intention to apply therefor shall have been published in the locality where the matter or thing to be affected may be situated, which notice shall state the substance of the contemplated law, and shall be published at least sixty days prior to the introduction into the legislature of such bill, and in the manner to be provided by law. The evidence that such notice has been published shall be established in the Legislature before such bill shall be passed."

We are unwilling to extend the doctrine of Stockton v. Powell, 29 Fla. 1, 10 South. Rep. 688, beyond what that case decided. The court was then dealing with a law passed at a regular session of the Legislature and every member thereof, and every person in the State, knew the date when the Legislature would convene, and there was

ample time to have given the notice required by the Constitution, so the presumption that it was given may not have been unreasonable with the lights the court then had before it.

There was no way in which a member of the extra session or any one else in the State could have known that the Legislature would be called together in extra session prior to the Governor's proclamation, and for us to presume that the necessary notice was given, would be to presume that the members had the gift of prevision.

The decision in Stockton v. Powell, *supra,* is based upon the presumption that no "branch of the legislative department will give its sanction to any such local or special legislation until legal and satisfactory evidence that such notice has been published 'shall be established in the legislature.' "

This presumption leads to a conclusion which we know is not so, and we are unwilling to extend it further by adopting another violent presumption,—that notice was given of intention to do something at an extra session of the Legislature before it was known that there would be an extra session.

The journals show that the 'Governor's proclamation calling the extra session of the Legislature was made on November 15, 1918; and in obedience thereto the Legislature met on November 25th, 1918. It adjourned on December 7, 1918. Under the Constitution, such session could not exceed twenty days. As only twenty-two days elapsed between the date of the proclamation and the adjournment of the Legislature, the constitutional notice could not have been given, and evidence of such notice could not have been established in the Legislature before

such bill was passed. This being so, the Act was not passed in conformity to the requirements of the Constitution, and is void.

The decree is reversed.

TAYLOR, WHITFIELD, ELLIS AND WEST, J. J., concur.

### On Petition for Rehearing.

BROWNE, C. J.—On petition for rehearing appellees suggest that the court overlooked and did not consider the effect of Chapter 7965, Special Acts of 1919, purporting to validate "all the acts, proceedings, contracts and records of the Napoleon B. Broward Drainage District * * * had or done pursuant to and under the provisions of Chapter 7430, as amended by Chapter 7758, Laws of Florida."

As counsel for appellees furnished the court with a memorandum of authorities in support of his petition, and subsequently submitted additional authorities, the matter is now fully presented, and we will dispose of it on its merits, as if a rehearing were granted.

We have carefully considered the authorities cited, and find nothing in them that calls for any change in the decision of this court whereby the judgment of the lower court was reversed. The provision of the Constitution affecting this case is "That no local or special bill shall be passed, unless notice of the intention to apply therefor shall have been published in the locality where the matter or thing to be affected may be situated, which notice shall state the substance of the contemplated law, and

shall be published at least sixty days prior to the introduction into the Legislature of such bill, and in the manner to be provided by law. The evidence that such notice has been published shall be established in the Legislature before such bill shall be passed.'' Sec. 21, Art. 3, Constitution of Florida. We held that it was not established in the Legislature before the bill was passed that the notice required by the Constitution was given, and that the bill was not constitutionally passed.

The question now presented by the petition is, can the Legislature validate what is claimed to be "an Act" which was never passed by the Legislature, or validate "Acts, proceedings, contracts and records" purporting to have been done or made under what is claimed to be "an Act of the Legislature," but which was never, in law, "passed"?

The cases cited by the petitioner do not support the affirmative of this proposition, as will be seen from brief references to them. In Lewis County v. Gordon, 20 Wash. 80, 54 Pac. Rep. 779, the court said: "It is, however, urged by counsel for appellants, that the Legislature could not validate the unconstitutional law of 1890, and authorize the payment of expenses incurred thereunder; and it is maintained that, the law of 1890 having been adjudged unconstitutional, it was as if no law had been enacted, and that no subsequent legislation could give such invalid law any validity. But the Legislature in 1895 did not attempt to give virtue to the Act of 1890. It did, however, recognize a moral obligation to pay expenses incurred under the law of 1890; and this it might do, and, though an Act of the Legislature may be unconstitutional, yet subsequent legislation may properly

direct expenditures incurred under such legislation to be paid. 3 Am. & Eng. Ency. Law, p. 678; People v. Bradley, 64 Barb. 228; Ritchie v. Franklin Co., 89 U. S. 825."

In People v. Bradley, *supra,* the court said: "Assuming the Act of 1855 to be unconstitutional, the expenses incurred under it may be provided for by subsequent legislation."

In State *ex rel.* Latimer v. Henry, 28 Wash. 38, 68 Pac. Rep. 368, it was held: "It is within the power of the Legislature to enact a statute authorizing the making of an assessment to cover the cost of work done on a public improvement under a void law."

In these cases the Legislature did not attempt to validate the void acts, but by subsequent and independent legislation provided for paying for work done and expenses incurred; it might have provided for paying for any other services.

In the case of Ritchie v. Franklin County, 22 Wall (U. S.) 67, 22 Law Ed. 825, the court sustained a curative act of the Missouri Legislature providing for a bond issue for road and bridge construction. It was contended that the validating act was ineffectual because the original act provided for a bond issue without submitting it to the vote of the people, and the court said: "There is no provision in the Constitution of Missouri restraining the General Assembly from conferring on counties the authority to borrow money to improve their roads without asking the consent of the voters. If so, why cannot the Legislature confer on counties the power to borrow money to pay for debts already contracted for this purpose?"

The court in this case made this distinction, however:

"If the county court had acted wholly outside of its duties the aspect of the case might have been different."

The reference in 25 R. C. L. 790 does not touch on the question presented here.

Corpus Juris, cited by petition, is rather opposed to the contention of petitioner: "While defects in drainage proceedings may be cured by statute, the Legislature cannot validate, retrospectively, assessments levied for purposes not authorized by law, or otherwise void for jurisdictional defects. But statutes validating assessments made by a drainage district without notice to land owners, and repealing the act creating the district, have been sustained on the theory that such statutes are not mere curative acts, but are in effect legislative reassessments of the property benefited. So also, the Legislature may by a subsequent statute recognize the moral obligation to pay the costs of an improvement made under a void statute, and provide a method by which such moral obligation may be turned into a legal one and made a lien on the property benefited." 19 C. J. Sec. 247, p. 736.

In Cranor v. Volusia County Commissioners, 54 Fla. 526, 45 South. Rep. 455, it was sought to enjoin the execution of a contract made by the county for the construction of hard-surface public roads on account of illegalities and irregularities in the acts of the county commissioners. Before the case was decided, the Legislature passed an act that "ratified, confirmed, validated and approved of in all respects, all the acts of the county commissioners of the several counties of the State of Florida, relative to laying out the grading, construction, building, repairing, paving and making contracts in relation to the same." This the court sustained because "the

alleged illegalities and irregularities in connection with the awarding and making of such contracts consist of matters that the Legislature had the power to dispense with in the first instance, and, under the established rule, it has the power to ratify, validate and approve such contracts and thereby to purge them of all defects, illegalities and irregularities in all such respects."

The question of an attempted validation of a void act of the Legislature, or something purporting to be an act of the Legislature, but which was not, because it was not passed in accord with the requirements of the Constitution, was not involved.

In Givens v. Hillsborough County, 46 Fla. 502, 35 South. Rep. 88, the court was considering the effect of a general statute validating county bonds for hard surfaced highways that had been issued in violation of the provisions of the statute regulating their issue.

The difference between the questions involved in those cases, and in the one under consideration, is too palpable to require any attempt to distinguish them.

In Olympian-Tribune Publishing Co. v. Byrne, 28 Wash. 79, 68 Pac. Rep. 335, the question involved was the right of a board of county commissioners to amend its records after adjournment so as to make them show the true orders made by the board. It throws no light on the matter under consideration.

In State, Bonney v. Reed, Collector of Bridgewater, 31 N. J. Law 133, this question was presented: At a special town meeting regularly called on the 31st day of August it was unanimously resolved and voted to borrow money to pay bounties to volunteers and drafted men mustered into service of the United States from that township, and

a tax was assessed to repay the money borrowed. Bonney contested the assessment, and after the institution of his suit the Legislature passed a validating act. It was contended by the prosecutor that his suit "having been previously commenced before the passage of the act, is not affected by it; that it make it applicable to a suit previously commenced would give to the act a retrospective construction and the character of an ex post facto law." The court held that the act applied as well to proceedings commenced before its passage as to those commenced afterwards, and that the act was not an ex post facto law.

In the case of Sudberry v. Graves, 83 Ark. 344, 103 N. W. Rep. 728, the question involved was the power of the Legislature to enact statutes of retrospective effect curing defects in proceedings done under the terms of a valid law. The court sustained the legislative power, but pointed out the distinction between validating irregularities in proceedings or in the mode and manner of exercising the powers conferred under the valid act, and the attempt by the Legislature to do something by a curative act that it did not have the power to do with regard to the act sought to be validated. In passing upon this phase of the question the court said: "This court has adopted the following rule stated by JUDGE COOLEY: 'If the thing wanting or which failed to be done, and which constitutes the defect in the proceedings, is something the necessity for which the Legislature might have dispensed with by prior statute, then it is not beyond the power of the Legislature to dispense with it by subsequent statute. And if the irregularity consists in doing some act, or in the mode or manner of doing some act, which the Legislature might have made immaterial by prior law, it is equally competent to make the same immaterial by a

subsequent law.' Cooley's Const. Lim. (7th ed.), p. 531; Green v. Abraham, 43 Ark. 420. On the other hand, the Legislature cannot cure the omission of an act which it could not in the first place have dispensed with or validate a proceeding wholly void because of a failure to comply with a jurisdictional requirement. Cooley's Const. Lim., p. 530; Gray's Lim. of Taxing Powers, Sec. 1249; Hamilton's Law of Special Assessment, Sec. 817."

On the question of whether the Legislature may validate provisions of an act which it did not have power to authorize, the court said: "It is doubted that the Legislature could, in the first place, have delegated to the viewers and county court the power to levy the assessments for the cost of construction of the improvement without notice to the landowners (Gray's Lim. of Taxing Powers, 1141, 1142; Stuart v. Palmer, 74 N. Y. 183, 30 Am. Rep. 289; McLaughlin v. Miller, 124 N. Y. 510, 26 N. E. 1104; Fallbrook Irrigation Dist. v. Bradley, 164 U. S. 112, 17 Sup. Ct. 56, 41 L. Ed. 369) ; and, being without power to dispense with notice, it could not validate assessments made in that way, if we are to treat the statute as merely a curative one."

In Spencer v. Merchant, 125 U. S. 345, 8 Sup. Ct. Rep. 921, the court had before it this question: By a statute of 1869 the Legislature sought to empower commissioners to assess the expenses of regulating, grading and preparing a street for travel, but provided no means by which the land-owners might have notice or opportunity to be heard with regard to the assessment. For that reason the statute was held to be unconstitutional. In 1881 the Legislature passed an act providing for apportioning a tax for the improvements done under the act of 1869 among the certain parcels of land that had not

paid their former assessment. The court in sustaining the validity of the act said: "In *Re Van Antwerp*, 56 N. Y. 261, an assessment for a street improvement had been declared void by reason of failure to procure necessary consents of property-owners. The Legislature made a re-assessment, imposing two-thirds of the expense upon a benefited district and one-third upon the city at large. The act was held valid *as a new assessment* and not an effort *to validate a void one.*"

Our position with regard to Chapter 7758 of the special session of 1918 is that this act was never passed by the Legislature of Florida, because that which could not be done, was not done.

We held that the essential matters which the Constitution required to be done before such an act could be "passed" were not done, and that, therefore, in contemplation of the Constitution the Legislature could not, and in effect did not, pass the bill that subsequently came to be known as Chapter 7758, Acts of 1918.

The curative act (Chapter 7965, Special Acts of 1919) purports to validate everything "had or done pursuant to and under the provisions of Chapter 7430, as amended by Chapter 7758, Laws of Florida." As there could be no acts had or done "pursuant to" an act that was not constitutionally "passed," the attempted validation was ineffective.

The situation is analogous to this: a bill is introduced in the Legislature and passes one house, but there is no record of yea and nay vote on its final passage in the other house. Such a bill, although complying with all the other requirements, even to being signed by the Governor, is not "passed." A subsequent Legislature

could not by referring to this bill by its title or number, validate all acts done under its provisions, because nothing had been done and nothing could be done under the provisions of an act which never passed.

An unlimited and unrestrained power to validate proceedings and transactions done in violation of the provisions, or without authority of a valid Act, tends to destroy government by previously enacted laws, and substitutes therefor government by groups of individuals acting without authority, whose illegal acts may subsequently be validated. The rights of property are better safeguarded when they can only be effected by previously enacted laws, than when action comes first, and legislative approval or authority comes after property has been taken by taxation or otherwise. The one rests upon legislative will and authority previously expressed and becomes a rule of conduct, while the other depends upon subsequent legislative action to justify acts and things previously done or performed without authority.

There are many situations when a validating act is beneficial and proper, but we quite agree with the Supreme Court of North Dakota when it says: "All jurists agree that this power, while highly beneficial when kept within proper limits, is liable to great abuse; and, while some of the cases have given it very wide scope, yet the unmistakable trend both of recent judicial decisions and of recent constitutional changes is in the direction of strictly limiting this power." Finlayson v. Peterson, 5 N. D. 587, 67 N. W. Rep. 953, 33 L. R. A. 532.

Chapter 7758, Acts of Special Session of 1918, not having been constitutionally passed, is a nullity, and Chapter 7965, Special Acts of 1919, purporting to validate

everything done under the provisions of Chapter 7758, is ineffectual to put life into a corpse.

The petition for rehearing is denied.

TAYLOR AND ELLIS, J. J., concur.

WHITFIELD AND WEST, J. J., dissent.

WHITFIELD, J., dissenting.

Chapter 7965, Acts of 1919, is as follows:

"CHAPTER 7965.

"AN ACT to ratify, approve, validate and confirm all the acts, proceedings, contracts and records of the Napoleon B. Broward Drainage District, its Board of Supervisors, its officers and agents, had or done pursuant to and under the provisions of Chapter 7430, as amended by Chapter 7758, Laws of Florida, and of the officers of said County thereunder, and all assessments made and taxes collected and levied thereunder and a certain issue of bonds of the par value of Nineteen Thousand ($19,000.00) Dollars, bearing date of the 6th of January, 1919, which bonds were validated on the 15th day of March, 1919, by the Circuit Court Judge of Broward County, Florida, and to cure and validate each informality or irregularity in connection therewith.

"*Be It Enacted by the Legislature of the State of Florida*:

"Section 1.   That all acts, proceedings, contracts and records of the Napoleon B. Broward Drainage District and the Board of Supervisors thereof, and of all of its of-

ficers and agents, had or done, pursuant to and under the provisions of Chapter 7430, Laws of Florida, as amended by Chapter 7758, Laws of Florida, and all of the officers of the Counties of Dade and Broward thereunder, and all assessments made and taxes levied and collected thereunder, be, and the same are hereby, validated, ratified, approved and confirmed in every respect, and any informality, or irregularity in connection with the same, or any part thereof, is hereby declared to be cured, validated, ratified and confirmed.

"Sec. 2.    That a certain issue of bonds of the said Napoleon B. Broward Drainage District of the par value of Nineteen Thousand ($19,000.00) Dollars, bearing date of January 6th, 1919, and which were validated by the Judge of the Circuit Court of Broward County, Florida, on March 15th, 1919, be, and they are hereby, ratified, validated and confirmed in every respect, and any informality or irregularity in connection with the issuance of said bonds, or in connection with the validation thereof in the Circuit Court, be, and the same is hereby, cured, ratified and validated in every respect.

"Sec. 3.    That all contracts heretofore made by the Board of Supervisors of said District pursuant to the provisions of said Chapter 7430 and Chapter 7758, and all moneys paid under and by virtue of any such contract, and all proceedings taken in connection therewith are likewise validated, ratified and confirmed and approved.

"Sec. 4.    All laws and parts of laws in conflict herewith are hereby repealed.

"Sec. 5.    This Act shall become effective upon its passage and approval by the Governor, or upon its becoming a law without such approval.

"Approved June 9, 1919."

This statute in effect makes a legislative assessment by validating an assessment made by administrative officers under a section of an act that has been held to be invalid. The statute does not purport to validate sales made for the non-payment of the tax alleged to be illegally assessed.   See City of Orlando v. Giles, 51 Fla. 422, 40 South. Rep. 834.

In Redman v. Kyle, 76 Fla. 79, 80 South. Rep. 300, it was held that Section 7, Chapter 7430, Acts of 1917, is invalid because it did not provide for notice to property owners of the amount of the assessment to be made by the administrative board.   Such notice would not be essential if the amount of the assessment had been fixed by the Legislature itself. Lainhart v. Catts, 73 Fla. 735, 75 South. Rep. 47.

If the Legislature could have itself made the assessment without notice to the property owner, it can make the assessment without notice by validating the assessment as made, when it is for a public purpose within the police power, and property rights secured by the Constitution are not thereby violated. Chapter 7965 does not purport to give validity to Chapter 7758, but "to ratify, approve, validate and confirm all acts done and assessments made and taxes levied under Chapter 7430, as amended by Chapter 7758."

Even though Chapter 7758, Acts of Extra Session of 1918, which purports to make an assessment of the taxes complained of, is itself invalid, this does not affect the validity of Chapter 7965, Acts of 1919, which in effect makes a legislative assessment when it validates, ratifies and confirms all acts and proceedings had, all contracts and assessments made and taxes levied "under the provisions of Chapter 7430, as amended by Chapter 7758."

Section 7 of Chapter 7430 and Chapter 7758 are equally invalid, and the reference made in Chapter 7965 to Chapter 7758 does not render Chapter 7965 ineffectual any more than does the reference in Chapter 7965 to Chapter 7430, Section 7 of which was held invalid. The invalidity of Section 7, Chapter 7430, is the occasion for a validating act; and the legislative power to validate was not exhausted in illegally enacting Chapter 7758; therefore, Chapter 7965, which in effect makes a legislative assessment, is effectual; and reference to invalid Chapter 7758 does not affect the validity of Chapter 7965 any more than does the reference in Chapter 7965 to Chapter 7430. The effect of Chapter 7965 is, by the ratification of an assessment as previously made under invalid Section 7 of Chapter 7430, to impose a tax burden upon property for a public purpose within the police power, notwithstanding any illegality in the original assessment of the tax, the State having the power to do, but omitted to do originally what it did ultimately do by ratification. See Mattingly v. District of Columbia, 97 U. S. 687; United States v. Heinszen & Co., 206 U. S. 370, 27 Sup. Ct. Rep. 742; 19 C. J. 614-736; 172 U. S. 416; 80 Fla. 252, 86 South. Rep. 199. The enactment of Chapter 7758 at the Extra Session of 1918 may be regarded as a matter of mere irrelevancy. and the reference in Chapter 7965 to Chapter 7758 may be treated as surplusage, or as a means to identify the assessment that is validated. See 82 South. Rep. 770; 82 South. Rep. 815.

WEST, J., concurs.