467 A.2d 1108

**Eugene F. SCANLON, et al., Appellants,**

**v.**

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, et al., Appellees.**

**James M. BURD, et al., Appellants,**

**v.**

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, et al., Appellees.**

Supreme Court of Pennsylvania.

Argued May 25, 1983.

Decided Oct. 26, 1983.

Reargument Denied Dec. 1, 1983.

578

579

Michael T. McCarthy, Harrisburg, for appellants Scanlon, et al.

Allen C. Warshaw, Deputy Atty. Gen., for appellee Com.

John Hrubovack, Harrisburg, for appellee Penndot.

Joseph W. Marshall, III, Philadelphia, for appellants Burd, et al.

Before ROBERTS, C.J., LARSEN, FLAHERTY, McDER-MOTT and ZAPPALA, JJ.

## OPINION

LARSEN *, Justice.

The record in this case reveals the following facts: On June 29, 1976, a lawsuit was filed against appellees, Pennsylvania Department of Transportation (Penndot), and Pennsylvania Department of Environmental Resources, et al., in the United States District Court for the Eastern District of Pennsylvania, by the Delaware Valley Citizens' Council for

* This case was reassigned to writer on Sept. 20, 1983.

Clean Air.[1]  The action was brought to enforce the inspection/maintenance auto emission regulation (40 CFR 52.2038), under the authority of the Clean Air Act, as amended, 42 U.S.C. § 7401 et seq.  Later, on February 18, 1977, a second lawsuit was brought against the appellees in the same court, by the United States of America,[2] to compel the implementation, maintenance and enforcement of an inspection/maintenance auto emission program in certain particular counties in Pennsylvania under authority of Federal Law.[3]  Eventually, the two cases were consolidated.[4]

On August 29, 1978, without adjudication of any of the issues raised, the actions were concluded by the entry of a consent decree agreed to by counsel for the parties to the lawsuits.[5]  Under the terms and conditions of the consent decree, appellee Penndot was required to seek the enactment of enabling legislation for a franchise system of auto emission inspection and maintenance.  In the event that such legislation was not obtained by July 1, 1979, or, if the parties agreed, by October 1, 1979, then appellee Penndot would immediately move toward implementation of a private garage system of inspection.  The General Assembly failed to

1.  *Delaware Valley Citizens Council For Clean Air, et. al. v. Commonwealth of Pennsylvania, et al.,* In the United States District Court for the Eastern District of Pennsylvania, Civil Action No. 76–2068.

2.  *United States of America v. Commonwealth of Pennsylvania, et al.,* In The United States District Court for the Eastern District of Pennsylvania, Civil Action No. 77–619.

3.  Clean Air Act, as amended, 42 U.S.C. § 7413(b).

4.  Civil Action Nos. 76–2068 and 77–619, see notes 1 and 2.

5.  Mr. Justice Zappala's dissenting opinion is factually incorrect when it states that the Commonwealth of Pennsylvania is an active party in these proceedings.  Although the Commonwealth of Pennsylvania was an original named party, these proceedings are based upon the consent decree which was signed only by the Pennsylvania Department of Transportation and the Pennsylvania Department of Environmental Resources.  Additionally, this matter was submitted to the lower court by stipulations of the parties and the only appellee parties who signed the stipulations were the Pennsylvania Department of Transportation and the Pennsylvania Department of Environmental Resources.

provide legislation for a franchise system and Penndot proceeded to arrange for implementation of a private garage system as agreed. On December 22, 1979, pursuant to the consent decree, appellee Penndot adopted final regulations for an auto emission inspection program.[6]

On March 7, 1981, the consent decree was modified to extend the time within which Penndot was to implement the private garage system. On May 21, 1981, the United States District Court refused Penndot's request for another extension of time and ordered that the inspection/maintenance program as set forth in the consent decree be established without further delay. On June 16, 1981, the District Court issued an additional order requiring appellees to have a fully operational program by May 1, 1982. Penndot proceeded to carry out the provisions of the consent decree which necessarily involved the expenditure of state monies. Final equipment standards were adopted and promulgated on October 10, 1981.[7]

On October 5, 1981, the General Assembly overrode a gubenatorial veto and enacted into law H.B. 456 which provided as follows:

"Neither the department nor any other department or agency of the executive branch of state government shall expend any public funds for the establishment and administration of any system for the periodic inspection of emissions or emission system of motor vehicles." (1929, April 9, P.L. 177, Art XX, § 2013, added 1981, Oct. 5, P.L. 289, No. 99, § 2; 71 P.S. § 523).

After the passage of H.B. 456, Penndot ceased to implement the terms of the consent decree. As a result, on January 22, 1982, the United States District Court entered an order holding the Commonwealth in contempt.

In June and July of 1981, the present actions were initiated by the two groups of appellant-legislators, each group filing a separate petition for review in the Commonwealth

6. 67 Pa.Code § 177.1 et seq.

7. 11 Pa.Bul. 3519 (1981).

582

Court.[8]  Both suits allege that the appellee Penndot was not empowered by any legislation to enter into a consent decree committing the Commonwealth to the implementation of an auto emissions inspection/maintenance program.  The actions aver that, without authorizing legislation, Penndot lacked the authority to: (1) establish and implement an auto emissions inspection system;  (2) ensure enforcement of such a system;  and (3) establish any subsidiary programs to a primary emissions program.  In each lawsuit the appellants asked, *inter alia,* for a declaratory judgment ruling that Penndot did not have the power to establish, implement and maintain an inspection/maintenance auto emission program as contemplated by the consent decree;  and further that an injunction issue, enjoining appellees from performing the terms and conditions of the consent decree without obtaining authorization from the legislature.

After the two cases were consolidated for trial, the Commonwealth Court entered a decree finding that the appellee Penndot had the authority to establish, implement and maintain an auto emissions inspection program as called for by the consent decree and denied appellants' prayer for relief. 66 Pa.Cmwlth. 129, 443 A.2d 1197.  Appeal to this Court followed.

## I.

The appellants argue that appellees lacked the authority to establish and implement an auto emissions inspection program at the time they entered into the consent decree calling for such a program.

The appellee Penndot, on the other hand, argues that indeed it had authority to commit to the implementation of an emissions inspection program by virtue of Sections 4701, 4702(a), 4521, 4531 and 6103 of the Motor Vehicle Code[9] which Sections provide, in the order set forth, as follows:

8.  *Burd, et al. v. Commonwealth, et al.,* No. 1506 C.D.1981.  *Scanlon, et al. v. Commonwealth, et al.,* No. 1762 C.D.1981.

9.  Act of 1976, June 17, P.L., 162, No. 81 § 1 eif. July 1, 1977, 75 Pa.C.S.A. 4701;  Act of 1976, June 17, P.L. 162, No. 81 § 1 eff. July 1,

## § 4701.  *Duty to comply with inspection laws*

No owner or driver shall refuse to submit a vehicle to any inspection and test that is authorized or required by the provisions of this chapter.

## § 4702.  *Requirement for periodic inspection of vehicles*

(a) General rule.—The department shall establish a system of semiannual inspection of vehicles registered in this Commonwealth.[10]

## § 4521.  *Promulgation of regulations by department*

The department shall promulgate regulations governing the number, size, color, type, construction, location and use of other equipment on vehicles consistent with but not limited by the provisions of this subchapter and taking into consideration different requirements for different classes or types of vehicles.

## § 4531.  *Emission control systems*

(a) Compliance with established maximum levels.—No vehicle manufactured in compliance with the requirements of the Clean Air Act (77 Stat. 392, 42 U.S.C. § 1857), or any amendments or supplements thereto, shall have emissions exceeding the maximum permissible levels prescribed by law.

(b) Limitation on alteration of system.—No person shall change or alter the emission control system of a vehicle in such a manner that it fails to comply with the prescribed emissions criteria.  It is unlawful for the vehicle to be operated under its own power until a reinspection at an official inspection station establishes its full compliance.

## § 6103.  *Promulgation of rules and regulations by department*

1977, 75 Pa.C.S.A. 4702;  Act of 1976, June 17, P.L. 162, No. 81 § 1, eff. July 1, 1977, 75 Pa.C.S.A. § 4521;  Act of 1976, June 17, P.L. 162, No. 81, § 1, eff. July 1, 1977, 75 Pa.C.S.A. § 4531;  Act of 1976, June 17, P.L. 162, No. 81, § 1, eff. July 1, 1977;  75 Pa.C.S.A. § 6103.

**10.**  In 1982, Section 4702 was amended to provide for annual inspection of vehicles.

"Except as provided in subsection (b), the department shall establish a system of annual inspection of vehicles ..."

In addition to the specific powers granted to the department by this title to promulgate rules and regulations, the department shall have the power in accordance with the provisions of the act of July 31, 1968 (P.L. 769, No. 240), known as the "Commonwealth Documents Law," to promulgate, consistent with and in furtherance of this title, rules and regulations in accordance with which the department shall carry out its responsibilities and duties under this title.

None of the statutory provisions cited by the appellee Penndot empower it to implement an auto emissions inspection/maintenance program such as that which it agreed to implement in the Federal Court consent decree.

In considering Section 4701, it is helpful to examine its predecessor, Section 834 (75 P.S. § 834) which provided:

"(a) Every owner of a motor vehicle . . . being operated in this Commonwealth, shall submit such motor vehicle to such inspection of its mechanism and equipment as may be designated by the secretary, *including such emission control systems and devices* for which the Secretary of Transportation, in consultation with the Secretary of Environmental Resources, has adopted inspection procedure and requirements which shall, to the extent possible and practical, be consistent with the requirements of the 'Clean Air Act' . . . These requirements shall not apply within ninety (90) days after they are adopted, shall not be changed oftener than once a year and *shall apply only to those motor vehicles as are required by Federal law or regulation to be equipped with such emission control systems and devices.* The inspection of such devices and systems shall commence on the first day of inspection periods ·. . . Such emission control systems and devices shall be inspected once a year." (Emphasis added)

The language of Section 834(a) set forth above is not the original statutory language as adopted by the legislature in 1959. The provisions of Section 834(a) which immediately preceeded Section 4701, became part of the statute by amendment in 1972. This 1972 revision demonstrates a

legislative intent, at that time, to grant Penndot the authority to mandate auto emissions inspections, an authority it did not previously have. The legislature accomplished this end by including in the statute such phrases as: *"including such emission control systems and devices"*; and *"inspection procedure and requirements which shall, to the extent possible and practical, be consistent with the requirements of the 'Clean Air Act' "*; and *"shall apply only to those motor vehicles as are required by Federal law or regulation to be equipped with such emission control systems and devices."* Section 834(a) was repealed by the General Assembly in 1976 when a comprehensive Motor Vehicle Code [11] was adopted. Among the provisions of the new code is Section 4701. Upon a reading of Section 4701, it is readily apparent that all references to emission control systems, emission control devices, inspection procedures and requirements, and the "Clean Air Act" were eliminated. The deletion of emissions systems language and "Clean Air Act" references evinces that the legislature intended to deny Penndot the authority to require emission systems inspections. "Change in the language of a statute ordinarily indicates a change in legislative intent." *Masland v. Bachman,* 473 Pa. 280, 374 A.2d 517 (1977). From 1959 to 1972 Penndot did not have authority to require auto emission systems inspections. By virtue of the amended Section 834(a), from 1972 to 1977 Penndot was empowered to administer such an inspection system. After the repeal of Section 834(a) and the adoption of Section 4701, Penndot was left without authority to order a system of auto emissions inspection. Section 4701 requires vehicle owners and drivers to submit their vehicles to any inspection and test authorized by chapter 47 of the Motor Vehicle Code.[12] We find that nothing contained in chapter 47 authorizes Penndot to establish and implement an auto emissions inspection system.

11. Vehicle Code, 1976, June 17, P.L. 162, No. 81, § 1, eff. July 1, 1977, 75 Pa.C.S.A. 101 et seq.

12. Chapter 47, Inspection of Vehicles, 1976, June 17, P.L. 162, No. 81 § 1, eff. July 1, 1977. 75 Pa.C.S.A. §§ 4701 to 4732.

Section 4702(a) provides for a *semi-annual vehicle inspection system* for *all vehicles* registered *in Pennsylvania.* A program providing for *annual auto emissions inspections* of *certain types of vehicles* registered in a *limited number of counties* in the Commonwealth is not within the authority of Section 4702(a). Penndot does not have the power to modify or alter the extent of authority it statutorily receives from the legislature.

> It is the General Assembly, not the Executive Branch, which has been given the constitutional power to determine what programs will be adopted in our Commonwealth and how they will be financed. Although this may be done upon the recommendation of the Executive branch, the final determinations are legislative in nature. The Executive's function is to carry out those programs authorized by legislation.

*Shapp v. Sloan,* 480 Pa. 449, 469, 391 A.2d 595, 6 (1978).

Section 4521 provides Penndot with authority to regulate the type and kind of equipment which must be included in various classes of vehicles. No authority to implement an auto emissions inspection system is established by the provisions of this section. The right to prescribe equipment does not carry with it the power to mandate inspections.

Section 4531, although addressed to emission control systems, does not provide the inspection authority as contended by appellee Penndot. The provisions of 4531(a) require that all vehicles manufactured in compliance with the requirements of the "Clean Air Act" be equipped with an emissions control system that meets the specifications of the "Clean Air Act." [13] Section 4531(b) prohibits any alteration of the emissions control equipment which reduces its efficiency below the standard set by 4531(a). Neither 4531(a) nor 4531(b) vests Penndot with the authority to implement an annual system of inspection and testing of the required equipment. In addition Section 4531 applies to all vehicles throughout the entire Commonwealth manufactured in compliance with the Clean Air Act. It is not limited to certain

13. 77 Stat. 392, 42 U.S.C. § 1857.

types of vehicles registered in a small number of counties, regardless of whether the vehicles were manufactured in compliance with the Clean Air Act.

Section 6103 merely grants Penndot the general authority to promulgate rules and regulations is carrying out the specific powers granted it by statute. Section 6103 is only applicable when it is determined that Penndot has been authorized to act by some other provision of the code.

Clearly, at the time of the entry of the Federal Court consent decree, the appellee Penndot lacked the statutory authority to establish and implement the auto emissions inspection/maintenance program contemplated by that order. The desirability and merits of the system is not the question here; it is the extent of authority possessed by Penndot which is at issue. We hold that appellees simply did not have the authority to establish and implement such a system at the time it agreed to the consent decree, and thus had no authority to enter into the consent decree.

## II

■ While this appeal was pending, the legislature enacted Act 3 of 1983 [14] which provides, in pertinent part, as follows:

(a) General rule.—Except as provided in subsection (b) neither the department nor any other department or agency of the executive branch of State government shall expend any public funds for the establishment and administration of any system for the periodic inspection of emissions or emission systems of motor vehicles.

(b) Exception.—The provisions of subsection (a) shall not apply when the secretary shall certify that such system is required to comply with Federal law and is necessary for the Commonwealth to receive or avoid the loss of Federal funds in which case the department may establish and administer such a system for motor vehicles registered in areas where periodic inspection of emissions or

14. 75 Pa.C.S.A. § 4706(b), as amended.

emission systems of motor vehicles is required by the Environmental Protection Agency of the United States or decrees of the courts of the United States.

Subsection (a) is a restatement of the Act of 1981, Oct. 5, P.L. 289, No. 99, § 2; 71 P.S. § 523 prohibiting expenditures for any emission inspection program in the Commonwealth.[15] Subsection (b) provides an exception to the general prohibition mandated by subsection (a) and the previous Act of Oct. 5, 1981. Subsection (b) grants Penndot the authority to establish and administer an emissions inspection program whenever "the Secretary shall certify that such system is required to comply with Federal law and is necessary for the Commonwealth to receive or avoid the loss of Federal funds."[16] The Act goes on to further limit appellee's authority by providing that if the Secretary makes such a certification, then Penndot may implement an inspection system only in areas of the Commonwealth where periodic emissions inspections are (1) "required by the Environmental Protection Agency of the United States," or (2) required by "Decrees of the Courts of the United States."[17]

Penndot points to Act 3 of 1983 as evidence of its authority to agree to the implementation of an auto emissions inspection system as provided by the consent decree. It is argued that Act 3 of 1983 is a limiting statute which restricts the broad authority granted by Section 4702 of the Motor Vehicle Code and specifically sets forth the type of auto emission inspection program which may be established. We do not see Act 3 of 1983 as a limiting enactment in the sense advanced by the appellees. Rather Act 3 of 1983 is a statute, coerced by a Federal Court Order,[18] and delivered as

15. Section 6 of Act 3 of 1983 repeals the Act of Oct. 5, 1981 (71 P.S. § 523).

16. Vehicle Code, 1976, June 17, P.L. 162, No. 81, § 1, eff. July 1, 1977, 75 Pa.C.S.A. 101 et seq.

17. Vehicle Code, 1976, June 17, P.L. 162, No. 81, § 1, eff. July 1, 1977, 75 Pa.C.S.A. 101 et seq.

18. By order dated January 22, 1982, the U.S. District Court for the Eastern District of Pennsylvania ordered, *inter alia,* as follows:

ransom for the rescue of the citizens of Pennsylvania from the considerable financial distress caused by the withholding of million of dollars in taxpayers' funds ticketed for Pennsylvania highways. But for the freezing of these critical funds and their threatened permanent loss, it is fair to conclude that the "exception" provisions of Act 3 of 1983 would not have been even conceived, let alone enacted into law.

Nothing contained in the provisions of Act 3 of 1983 gives the appellee blanket authority to establish an emissions inspection program when and where such a system is deemed necessary or desirable. The authority vested here is circumscribed by the specific conditions set forth in Subsection (b). Act 3 of 1983 authorizes Penndot to establish and implement an inspection system for motor vehicles registered in areas where emission inspections are required by the environmental protection agency of the Federal government or by decrees of the Federal courts. In this case the inspection system Penndot seeks to implement is embraced by the terms of a consent decree of the United States District Court for the Eastern District of Pennsylvania. The decree relied upon here, however, fails to provide the necessary condition required to activate Penndot's authority. Act 3 of 1983 contemplates and refers to a *valid* decree based upon proper authority. Where the decree is a consent decree, as is the case here, proper authority includes the lawful ability and power of the parties to enter into the agreement. Penndot did not have the power to establish and implement an emissions inspection system as provided by the decree, and therefore, could not validly agree to the

"The Secretary of the United States Department of Transportation ("Secretary"), or his designee, *shall not approve* any projects *or award* any grants under Title 23 of the United States Code in the Philadelphia or Pittsburgh areas, as those areas are defined in § 2(c)(VI) below, other than for safety, mass transit, or transportation improvement projects related to air quality improvement or maintenance; *See:* 42 U.S.C. § 7506(a)"

"The *Philadelphia Areas* shall consist of Philadelphia, Bucks, Montgomery, Chester and Delaware Counties; the *Pittsburgh Area* shall consist of Allegheny, Beaver, Butler, Westmoreland and Washington Counties; *See:* Consent Decree §§ 3(f), 3(g)"

conditions of the consent decree. Furthermore, the legislature, by passing Act 3 of 1983, cannot validate retroactively Penndot's consent to implement an emissions inspection program which, at the time of its consent, was beyond its authority. *See: Hartle v. Long,* 5 Pa. 491 (1846). The unrestrained power to validate actions taken without authority tends to erode government by previously enacted laws and in its place substitute government by men acting without authority, whose illegal acts may subsequently be validated. The rights of society are better protected when they can only be affected by previously enacted laws. Our system of government rests upon the will of the people and the authority granted thereby as expressed in previously enacted legislation, and not upon the adoption of legislation to justify actions previously taken without authority. When action comes first and legislative authority later, we have strayed from constitutional government. *See: Horton v. Kyle,* 81 Fla. 274, 88 So. 757 (1921).

### III

We conclude that at the time appellee Penndot agreed to the terms of the Federal Court consent decree providing for the implementation of an emissions inspection program, it did not have legislative authority to establish such a system. Because of the lack of authority, Penndot could not validly agree to establish and administer an inspection program and its purported agreement to do so is void. Further, we conclude that nothing contained in Act 3 of 1983 does or can retroactively vest appellees with the requisite authority. In addition, the exception provided for in subsection (b) of Act 3 of 1983 has no application to the Federal Court consent decree under the facts in this case, in that the appellees' agreement thereto is a nullity. Accordingly, and consistent with our holding that Penndot lacked the authority to consent to establish and implement an auto emissions inspection program, an injunction should issue enjoining appellees from performing the terms and conditions of the consent decree.

The decree of the Commonwealth Court is reversed and the case remanded for proceedings consistent with this opinion.

ROBERTS, C.J., and ZAPPALA, J., file dissenting opinions.

NIX and HUTCHINSON, JJ., did not participate in the consideration or decision of this case.

ROBERTS, Chief Justice, dissenting.

I dissent.

The Commonwealth Court was manifestly correct in holding that appellee Department of Transportation had the requisite statutory authority to implement the inspection system required by the terms of the consent decree into which appellee validly entered. See *Burd v. Department of Transportation*, 66 Pa.Cmwlth. 129, 133–135, 443 A.2d 1197, 1199–1200 (1982). It is unnecessary to address the effect of the initial version of 75 Pa.C.S. § 4706 (71 P.S. § 523), which prohibited the expenditure of public funds "for the establishment and administration of any system for the periodic inspection of emissions or emission system of motor vehicles." Not only was that statute enacted after the entry of the consent decree, but it has since been amended to authorize appellee's expenditure of funds on an inspection system which is certified as being required by federal law and necessary to the Commonwealth's receipt of federal funds, 75 Pa.C.S. § 4706(b), clearly the circumstance of this case. Accordingly, the order of the Commonwealth Court, which denied appellants' motions for summary judgment, should be affirmed.

ZAPPALA, Justice, dissenting.

This is an appeal from an Order of the Commonwealth Court denying Appellants' petitions for declaratory and injunctive relief. The Appellants in these consolidated cases are members of the Pennsylvania General Assembly. They instituted these actions to challenge the authority of the

Appellee, Department of Transportation (PennDOT), to establish and implement an automobile emission inspection and maintenance (I/M) program.

PennDOT had taken steps toward developing such a program to control air pollution in the Pittsburgh and Philadelphia areas as a result of two suits brought in the United States District Court for the Eastern District of Pennsylvania. Those actions, brought by the Delaware Valley Citizens Council for Clean Air and by the United States Environmental Protection Agency (EPA) against the Commonwealth, PennDOT, and the Department of Environmental Resources (DER), sought enforcement of the I/M provision of the state's implementation plan (SIP), required by the Clean Air Act, as amended, 42 U.S.C. § 7410(a)(2)(G). The suits were settled in August of 1978 when the parties entered into a consent decree.

According to the terms of this consent decree, PennDOT was to seek legislative approval for a franchise system of emission inspections or, in the event of failure to obtain such approval, to implement a private garage inspection system under its own authority. When the General Assembly failed to pass the franchise system legislation proposed by PennDOT, the Department promulgated regulations and standards for the private garage system, to take effect under the modified consent decree by May 1, 1982. In October of 1981, the General Assembly passed, and overrode the governor's veto of, House Bill No. 456, which prohibited PennDOT or any other executive agency from spending "any public funds for the establishment and administration of any system for the periodic inspection of emissions or emission system of motor vehicles." 75 Pa.C.S. § 4706 (1981) (amended 1983). Having thus been disabled from proceeding with the I/M program, PennDOT sought a stay of the consent decree in the federal actions. The stay was denied, and upon motion of the plaintiffs the Commonwealth was found in contempt for failure to proceed with implementation of the program. *Delaware Valley Citizens Council for Clean Air v. Commonwealth of Pennsylvania,* 533 F.Supp. 869

(E.D.Pa.1982); *aff'd,* 678 F.2d 470 (3rd Cir.1982); *cert. denied,* —— U.S. ——, 103 S.Ct. 298, 74 L.Ed.2d 280 (1982).

In these actions, the Appellants sought to establish that PennDOT at all times lacked the authority to implement an I/M program or to consent to such a program on behalf of the Commonwealth. The Commonwealth Court concluded to the contrary, finding that under § 4531 of the Motor Vehicle Code, Title 75, Pa.C.S., PennDOT "had the statutory authority to implement an auto emission inspection maintenance program at the time it entered into the consent decree in the Federal District Court." Because of the effects of House Bill No. 456, the court found no threat of irreparable harm and therefore denied the injunctive relief as well.

Subsequent to the Commonwealth Court's decision, and the filing of this appeal, the General Assembly enacted Act 3 of 1983. While maintaining the prohibition on expenditure of funds for emissions inspection programs as the general rule of 75 Pa.C.S. § 4706, Act 3 added as an exception that such prohibition "shall not apply when the secretary [of transportation] shall certify that such system is required to comply with Federal law and is necessary for the Commonwealth to receive or avoid the loss of Federal funds," and affirmatively provided that in such a case "the department may establish and administer such a system for motor vehicles registered in areas where periodic inspection of emissions systems of motor vehicles is required by the Environmental Protection Agency of the United States or decrees of the court of the United States."

A Majority of this Court today holds that the Department did not have the authority to enter into the consent decree, that the decree is invalid, and that the Department does not presently, under Act 3, have authority to implement the I/M program. I most vigorously dissent.

The first and perhaps most fundamental error of the Majority Opinion occurs in the introductory sentence. There it is stated that the record reveals the "fact" that a suit was filed in federal court "against appellees, Pennsylvania Department of Transportation (Penndot), and Pennsylvania

Department of Environmental Resources, et. [sic] al." Slip opinion at 1. What is stated is true as far as it goes. The Majority errs by what it does not state. Even a cursory glance at the record of the federal court actions makes it clear that those cases involved, *as separate defendants,* the Commonwealth of Pennsylvania; the Department of Transportation and the Secretary of the Department; and the Department of Environmental Resources and the Secretary of that Department. The captions and innumerable references in the Opinions and Orders entered in the course of that litigation indicate that the Commonwealth was the primary defendant in those cases. In affirming the District Court's order holding the Commonwealth in contempt, the Court of Appeals for the Third Circuit noted that a motion to intervene filed by two groups of state legislators had been denied, which denial had been affirmed with the holding that the interests of the legislators were adequately represented by the Commonwealth defendants. *Delaware Valley Citizens Committee for Clean Air, et al. v. Commonwealth of Pennsylvania, et al.,* 678 F.2d 470, 474 (3rd Cir.1982); *cert. denied,* —— U.S. ——, 103 S.Ct. 298, 74 L.Ed.2d 280 (1982). The Court also noted that the "Pennsylvania Department of Justice, members of which were signatories of this decree, has the exclusive power to compromise and settle lawsuits against the Commonwealth," [*see* 71 P.S. § 293 (Repealed 1980, Oct. 15, P.L. 950, No. 164, § 503 imd. effective)] and that "the Attorney General, who heads the Department of Justice, has represented the Commonwealth in this litigation from the time the complaint was filed, through the negotiation and signing of the consent decree, and up to the present." 678 F.2d at 475. The Court further stated in unmistakable language "that the Commonwealth itself was and remains bound by the consent decree." *Id.* The Majority conveniently ignores the fact that the federal courts had before them as defendants not only the two[1] agencies involved in the case at bar, but also the Commonwealth itself.

1. The actions which are the subject of this appeal were brought against both PennDOT and DER, but were discontinued as to DER on August 28, 1981. The removal of DER as a defendant in these

The importance of this misstatement of fact becomes immediately obvious in the next paragraph where the Majority indicates that "the actions were concluded by the entry of a consent decree agreed to by counsel for the *parties* to the lawsuits." Majority opinion at 1109 (Emphasis added). If, as the Majority implies, the party defendant was simply PennDOT, then the question addressed by the Majority, whether that agency had authority to establish an I/M system at the time it entered into the consent decree, might indeed be the relevant question. If however, as was found by the federal courts, the Commonwealth itself was the party defendant, then regardless of the intragovernmental processes necessary to comply, the Commonwealth itself, not just the agencies or the executive, but the entire state government, became bound by the consent decree. The Court of Appeals in an early challenge to the authority of the Environmental Protection Agency to enforce the requirements of the Clean Air Act and the State Implementation Plan by proceeding directly against the Commonwealth, held that such enforcement was valid. *Commonwealth of Pennsylvania v. Environmental Protection Agency,* 500 F.2d 246 (3rd Cir.1974). The Court made clear its awareness that in permitting the EPA to enforce the SIP by acting against the Commonwealth itself, the processes of all branches of the Commonwealth government were implicated.

It is also true that compliance with the plan will require the Commonwealth to exercise its *legislative and administrative* powers, for that is the means by which a state regulates its transportation system. However, it must not be forgotten that when dealing with the commerce power, 'we are guided by practical considerations' (citation omitted). In enacting the Clean Air Amendments of 1970 Congress created an interlocking governmental structure in which the Federal Government and the states would

actions does not, however, permit decision of the actions by reference only to statutory enactments concerning PennDOT. The legislative program for enforcement of air pollution policy must be read as a whole, and all statutes in that regard must be read *in pari materia. See* 1 Pa.C.S. § 1932.

cooperate to reach the primary goal of the Act ... Under its provisions, state and local governments retain responsibility for the basic design and implementation of air pollution strategies, subject to approval and, if necessary, enforcement by the Administrator. We believe that this approach represents a valid adaption [sic] of federalist principles to the need for increased federal involvement.

500 F.2d at 262 (emphasis added). *See also, Delaware Valley Citizens Council v. Commonwealth,* 678 F.2d at 476. As a matter of Federal law then, the Commonwealth itself, through all its branches, must enforce the requirements of the Clean Air Act and Pennsylvania's SIP. [It must be noted that although *the Commonwealth* challenged a particular requirement of the SIP in that case, the part of the plan requiring the Commonwealth "to establish an inspection system for certain motor vehicles to ensure that they do not emit carbon monoxide and hydrocarbons above the level prescribed by EPA ... [was] not challenged by the petition for review." *Id.* at 249.] It is against this background that the present case must be examined.

The Majority reviews the legislative history of various sections of the Motor Vehicle Code, additions and deletions, and concludes that "the deletion of emissions systems language and 'Clean Air Act' references evinces that the legislature intended to deny Penndot the authority to require emission systems inspections." Majority opinion at 1112. I cannot agree with this conclusion. Section 4521 of Title 75, the initial section of Subchapter B, "Safety and Anti-Pollution Equipment", assigns to PennDOT the duty to

promulgate regulations *governing the* number, size, color, type, construction, location and *use of other equipment* on vehicles *consistent with but not limited by* the provisions of this subchapter and *taking into consideration different requirements for different classes or types of vehicles.* (Emphasis added).

Section 4531(b) provides that

No person shall change or alter the emission control system of a vehicle in such a manner that it fails to comply with the prescribed emissions criteria. It is un-

lawful for the vehicle to be operated under its own power until a *reinspection* at an *official inspection station* establishes its full compliance. (Emphasis added).

The above-quoted, emphasized language supplies sufficient indication that PennDOT, even after the 1976 changes in the statutory language noted by the Majority, had the authority to set emissions criteria, require emission control equipment, and require inspections to establish compliance. Although the deleted language had made such authority explicit, by retaining the language of Sections 4521 and 4531 after the deletions the legislature acknowledged the continued existence of the Department's authority in this regard. It would be absurd for the legislature to have granted PennDOT authority to set requirements for emissions equipment, to make unlawful the tampering with such equipment and the operation of a vehicle until *re*-inspection establishes full compliance, and yet to have denied the authority to inspect such systems for tampering or compliance in the first place. At a minimum such authority must be recognized in PennDOT's power to "promulgate regulations . . . consistent with but not limited by the provisions of this subchapter". 75 Pa.C.S. § 4521. It is a basic rule of statutory construction that the legislature does not intend an absurd result. 1 Pa.C.S.A. § 1922(1). (Contrary to the assumption of the Majority, the change in language does not necessarily indicate a change in intent. The deletion of language is also consistent with the view that because that authority described by the deleted language was adequately spelled out by other statutory language, the language was no longer necessary. Such a view is particularly worthy of consideration when the deletion and change in language occurs as a result of the consolidation of statutes in a comprehensive Motor Vehicle Code.) We must, therefore, interpret the Motor Vehicle Code as having established in PennDOT the duty to promulgate the challenged regulations.

This interpretation is further supported by reference to 35 P.S. § 4001 *et seq.,* the Air Pollution Control Act, 1960, Jan. 8, P.L. (1959) 2119, as *amended* 1972, Oct. 26, P.L. 989, No. 245, § 1. In that Act the Department of Environmental

Resources, a party defendant in the federal litigation, is given the power to "[r]equire the owner or operator of any air contamination source to sample the emissions thereof in accordance with such methods and procedures and at such locations and intervals of time as the department may reasonably prescribe and to provide the department with the results thereof." 35 P.S. § 4004(2.3). Air contamination source is previously defined in the Act as "[a]ny place, facility or equipment, *stationary or mobile,* from . . . which there is emitted . . . any air contaminant." 35 P.S. § 4003(7). (Emphasis added). DER is further given authority to "[e]valuate motor vehicle emission control programs with respect to their effect on air pollution and determine the need for modifications of such programs." 35 P.S. § 4004(10.1). Finally, the Environmental Quality Board of DER has the power to "[r]ecommend to the Secretary of Transportation performance or specification standards, or both, for emission control systems and devices on motor vehicles." 35 P.S. § 4005(4). It would be anomolous indeed if the legislature granted DER authority to require the owners of cars to submit them for emissions inspections, to evaluate emissions control programs, and to recommend emission control systems standards to the Secretary of Transportation, and yet, along with all the previously enumerated powers of the Department of Transportation, withheld from that department the authority to implement an emission control inspection/maintenance program.

At the very least, these powers of DER refute the argument advanced in Part II of the Majority Opinion that, in the federal litigation, the proper parties were not before the court and could not lawfully bind the Commonwealth to the terms of the consent decree. The deputy attorneys general who signed that decree clearly had authority to act on behalf of the Commonwealth itself, and as agents of the Department of Justice adequately represented the interests of the Commonwealth in those proceedings.

The Majority's discussion of the effect of Act 3 of 1983, 75 Pa.C.S. § 4706(b), as amended, compounds the error previously noted. That Act provides that PennDOT may estab-

lish and administer an I/M program where required by EPA or the federal courts "when the secretary shall certify that such system is required to comply with Federal law and is necessary for the Commonwealth to receive or avoid the loss of Federal funds." The Majority, relying on its analysis that PennDOT did not have authority to enter into the consent decree, declares that the decree was not a valid decree based upon proper authority. Because Act 3 contemplates such a decree as a pre-requisite for the establishment of an I/M program, says the majority, the conditions of Act 3 have not been met and the program is enjoined.

It is incomprehensible that a Majority of this Court could hold that a decree entered by another court, which court has authority to determine its own jurisdiction, is invalid, thereby abandoning accepted principles of judicial comity. The Majority further errs in concluding that because the decree is invalid the program must be enjoined. This conclusion ignores the alternate basis for implementation of an I/M program set out in Act 3, "when it is required by the Environmental Protection Agency of the United States." The record makes it abundantly clear that the I/M program which was the subject of the federal litigation is required by federal law, by Pennsylvania's SIP, and by EPA regulations, and that the federal court action was only a means of enforcing those requirements. PennDOT clearly has the authority to implement the challenged program following the enactment of Act 3 of 1983. Indeed, this intervening change in the applicable law has made moot this entire appeal, for by "granting" PennDOT the authority to implement an I/M program of the type challenged under conditions which undeniably exist, the legislature has resolved the only issue raised by the Appellants. *See generally, In Re Gross,* 476 Pa. 203, 382 A.2d 116 (1978).

Despite the self-serving protestations to the contrary ("The desirability and merits of the system is [sic] not the question here; it is the extent of the authority possessed by PennDOT which is at issue." Majority opinion at 1113), the Majority Opinion belies a clear intent to rewrite both federal and state environmental law according to the conceptions of

the Majority. In its zeal to fend off the "coercion" of the federal court and redeem the "ransom" paid by the citizens of the Commonwealth for the release of their captive tax dollars, the Majority adopts only those facts of record which support its position and discards those which implicate a different result. The federal government through its several branches, and the state government through its several branches, over the years have established the applicable policies in regard to air pollution, the means by which those policies are to be implemented, and the authorities responsible for their implementation and enforcement. The Commonwealth, through enactments of several sessions of the General Assembly, has delegated the authority to bring the Commonwealth into compliance with the requirements of federal law to two agencies. To allow a select group of disenchanted legislators and former legislators to overturn duly enacted legislation and regulations by resort to an action such as the present one is to abandon constitutional government and the stability it promises in the face of continuous changes in personnel, and to substitute anarchy, government changing with the whims and caprices of those who happen to gain control for the moment. I cannot subscribe to this total abandonment of our traditions of governmental order.

I would dismiss the appeals as moot.