DELAWARE VALLEY CITIZENS' COUNCIL FOR CLEAN AIR, et al., American Lung Association of Philadelphia, and Montgomery County, Delchester Lung Association, Sierra Club, Pennsylvania Chapter Friends of the Earth of the Delaware Valley, Citizens' Committee for Environmental Control, Quinn, Kevin, Farrell, Kaysi, Weiss, Ruth G., Klinkner, John, Biez, Elizabeth S., Shulman, Mona

v.

COMMONWEALTH OF PA., & Train, Russell E., Ind. & as Administrator of the Environmental Protection Agency, et al., Sherlock, William T., Individually and as Secretary of the Pa. Dept. of Transportation, Goddard, Maurice K., Individually and as Secretary of the Pa. Dept. of Environmental Resources, Snyder, Daniel J., III, Individually and as Regional Administrator of the Environmental Protection Agency, Region III.

UNITED STATES of America

v.

COMMONWEALTH OF PENNSYLVANIA; the Pennsylvania Department of Transportation and William T. Sherlock, Secretary of the Pennsylvania Department of Transportation; The Pennsylvania Department of Environmental Resources and Maurice K. Goddard, Secretary of the Pennsylvania Department of Environmental Resource.

Appeal of COMMONWEALTH OF PENNSYLVANIA, Secretary of Pennsylvania Department of Transportation and Secretary of Pennsylvania Department of Environmental Resources.

Appeal of DELAWARE VALLEY CITIZENS' COUNCIL FOR CLEAN AIR.

Nos. 84–1179, 84–1208.

United States Court of Appeals, Third Circuit.

Argued Dec. 6, 1984.

Decided May 14, 1985.

**274**

James D. Crawford (argued), Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for Delaware Valley Citizens' Council for Clean Air, appellees in No. 84–1179 and cross-appellants in No. 84–1208.

Spencer A. Manthorpe, Chief Counsel, John M. Hrubovcak (argued), Asst. Counsel, Dept. of Transp., Harrisburg, Pa., appellant in No. 84–1179 and cross-appellee in No. 84–1208.

Before ALDISERT, Chief Judge, BECKER, Circuit Judge, and STERN, District Judge.*

### OPINION OF THE COURT

BECKER, Circuit Judge.

This opinion addresses an appeal by the Commonwealth of Pennsylvania[1] from a large judgment for attorneys fees and costs in favor of the Delaware Valley Citizens' Council for Clean Air (DVCCCA), pursuant to the attorneys fee provision contained in § 304(d) of the Clean Air Act (the Act), 42 U.S.C. § 7604(d), in an action

---

* Honorable Herbert J. Stern, United States District Judge for the District of New Jersey, sitting by designation.

1. The appeal is also filed on behalf of the cabinet secretaries of two departments of Commonwealth government, the Department of Environmental Resources (DER) and the Department of Transportation (PennDOT). However, we shall

brought under the citizen lawsuit provision of the Act, 42 U.S.C. § 7604(a), 581 F.Supp. 1412 (E.D.Pa.1984). We also consider a cross-appeal by DVCCCA.

The underlying action was instituted by DVCCCA to compel Pennsylvania to meet federal air quality standards in several areas of the state. The litigation was ostensibly concluded in 1978 by entry of a consent decree establishing a program for the inspection and maintenance of automobile emissions systems in those geographic areas (the I/M program). After obtaining the consent decree, however, DVCCCA was confronted with prolonged and determined resistance by the Commonwealth and the Pennsylvania General Assembly to the decree's implementation, and its implementation was accomplished only after protracted, bitter, and highly publicized enforcement proceedings. These fee petition appeals relate only to work performed *after* entry of the consent decree.

While the appeals present a number of questions, the most important is whether attorneys fees may be awarded for the work of DVCCCA's in-house counsel. Over the Commonwealth's objection, we will affirm the district court's award of fees for such work. Moreover, for the reasons that follow, we will affirm the judgment of the district court in all other respects as well.

### I. BACKGROUND FACTS AND THE FEE PETITION RULING

The relevant facts surrounding the complex litigation underlying this attorneys fee request have very recently been summarized by this Court and need not be repeated here. *See DVCCCA v. Commonwealth of Pennsylvania,* 755 F.2d 38, 40–41 (3d Cir.1985).[2] We will therefore turn

refer to appellants collectively as "the Commonwealth."

2. For additional discussions of the legal and factual background of this litigation, *see DVCCCA v. Commonwealth of Pennsylvania,* 674 F.2d 970 (3d Cir.), 458 U.S. 1125, 103 S.Ct. 14, 73 L.Ed.2d 1400 (1982); *DVCCCA v. Commonwealth of Pennsylvania,* 674 F.2d 976 (3d Cir.),

directly to a brief description of the fee petition litigation itself.

█ In its petition to the district court for attorneys fees and costs, plaintiff divided its request for compensation into nine phases.[3] The Commonwealth acceded to this approach, as did the district court, which made its fee award in terms of the nine phases.[4] The district court considered an extensive record and decided the fee petition application in a comprehensive opinion of some 40 pages. While we need not summarize the district court's opinion (the challenged portions are discussed *infra*), it is important to note that the court took much care in examining the fee petition and disallowed a significant number of claimed hours because it found them inadequately documented, duplicative, unnecessary, or excessive. The court awarded attorneys fees of $209,813.00 for work in the underlying litigation representing a lodestar of $82,233.50 augmented by multipliers of two for phases IV and VII and four for Phase V.[5] The court then stayed its order pending appeal.

## II. COUNSEL FEES UNDER THE CLEAN AIR ACT

This fee petition is brought pursuant to the Clean Air Act's counsel fee provision, § 304(d), 42 U.S.C. § 7604(d), which states:

> **(d) Award of costs; security**
> The court, in issuing any final order in any action brought pursuant to subsection (a) of this section, may award costs of litigation (including reasonable attorney and expert witness fees) to any party, whenever the court determines such award is appropriate.

In *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 103 S.Ct. 3274, 77 L.Ed.2d 938 (1983), the Supreme Court held that "absent some degree of success on the merits by the claimant, it is not 'appropriate' for a federal court to award attorney's fees." *Id.* 103 S.Ct. at 3281.[6] Plaintiff is eligible for attorneys fees, therefore, only if it has achieved "some success on the merits."

█ If plaintiff meets this threshold eligibility requirement, it is entitled under § 304(d) to an award of "reasonable" fees. This part of the Clean Air Act's attorneys fee provision is consonant with the requirements of most other statutory attorneys fee provisions, including 42 U.S.C. § 1988, and we see no reason why the calculation of a reasonable fee for Clean Air Act purposes should differ from the same calculation that courts undertake pursuant to other provisions with the identical standard. Accordingly, we hold that the jurisprudence regarding the calculation of reasonable attorneys fees developed in connection with other attorneys fee statutes—particularly § 1988—is applicable to cases brought pursuant to § 304(d). This includes the jurisprudence concerning the calculation of a lodestar, the determination of reasonable hourly rates, and the enhancement of a fee award based on the quality of the work. *See generally Blum v. Stenson*, —— U.S.

cert. denied, 459 U.S. 905, 103 S.Ct. 206, 74 L.Ed.2d 165 (1982); *DVCCCA v. Commonwealth of Pennsylvania*, 674 F.2d 987 (3d Cir.1982); *DVCCCA v. Commonwealth of Pennsylvania*, 678 F.2d 470 (3d Cir.), cert. denied, 459 U.S. 969, 103 S.Ct. 298, 74 L.Ed.2d 280 (1982).

3. The Commonwealth appeals the award of fees for work done during five of these phases, and the award of a multiplier for work done during three others. The work performed during these phases is discussed *infra*.

4. We approve the district court's exercise of discretion to treat the fee application in terms of phases of the case. *See Institutionalized Juveniles v. Secretary of Public Welfare*, 758 F.2d 897 (3d Cir.1985). As we noted in that case, at 919

n. 36, structural injunction cases such as this one, where the litigation proceeds in a number of discrete phases after the entry of an equitable decree, afford the district court flexibility to treat the litigation in separate categories for fee petition purposes if it so desires.

5. It also allowed $3,380.00 for work on the fee petitions and $6675.03 in costs.

6. In *Sierra Club*, the Court specifically considered the fee award language of § 307(f) of the Clean Air Act, 42 U.S.C. 7607(f). This language is identical to the language of § 304(d), 42 U.S.C. § 7604(d), which we consider in this case. The Court indicated that its holding applied with equal force to the award of attorneys fees under § 304(d). *See* 103 S.Ct. at 3280–81.

——, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984); *Institutionalized Juveniles v. Secretary of Public Welfare,* 758 F.2d 897 (3d Cir.1985).

Having set forth the contours of the Clean Air Act's attorneys fee provision, we now turn to a review of the challenged aspects of the fee award in this case.

## III. FEES FOR SPECIFIC PHASES OF THE PROCEEDINGS

■ The district court included in the lodestar five categories of work (phases I, II, III, VI, and IX) for which the Commonwealth contends that fees cannot be awarded. Before we examine these contentions, we state two general propositions. First, we have no doubt that, by gaining implementation of the consent decree, plaintiff has achieved "some success" in its efforts and a fee award is therefore "appropriate" under § 304(d) of the Act. We hold, therefore, that the work done in each of the five phases is compensable if the work contributed to DVCCCA's successful efforts to implement the consent decree.

Second, we point out that the district court made certain findings that bear generally upon the relationship between work in these phases and success in implementing the decree. The court stated:

> During the litigation and up until the present day, there has existed an intense adversarial atmosphere among all concerned parties. The defendants' presence has constantly been dominated by either a policy or an attitude that has tried to prohibit or delay the implementation of the I/M program in response to which the plaintiffs have constantly heldfast to their position, without being totally inflexible. Additionally, plaintiffs have been required to partake in activities which, while not directly required under the consent decree, were sufficiently related to its goals and the ongoing litigation that such efforts should, and will be compensated for in some reasonable measure.

These findings, based upon the district court's nine-year experience in this case, are subject to the clearly erroneous rule.

We conclude that they should not be disturbed.

■ We now consider whether the district court erred in awarding fees for work performed during the five phases at issue. Phase I involved the portion of the litigation that followed the Commonwealth's initial delay in promulgating proposed regulations for the I/M program as required by the consent decree. The Commonwealth objects to the award of fees for this work because it contends that DVCCCA acted in bad faith in refusing to negotiate what the Commonwealth considered a suitable extension of time for fulfillment of its obligations to publish the proposed regulations. The district court found that DVCCCA had not acted in bad faith, that its actions were appropriate, and indeed that a court order compelling compliance by the Commonwealth was required for the protection of DVCCCA's rights under the decree.

Phase II of the litigation primarily involved the submission by DVCCCA of comments to the proposed regulations that were required by the consent decree. The Commonwealth objects to the award of fees for this work because any person may submit comments on proposed regulations and the work was technical, rather than legal. The district court held that because DVCCCA was a party to the consent decree it had a special interest in commenting on the proposed regulations. The district court concluded that DVCCCA's efforts to ensure that the regulations were consistent with the consent decree should be compensated.

Phase III involved negotiations over a modification to the consent decree undertaken by the parties in the wake of legislative activity by the Pennsylvania General Assembly designed to thwart its implementation. The district court found that this work was necessitated by the Commonwealth's actions and was vital to the survival of the rights of DVCCCA and of the public under the consent decree.

We affirm the district court's decision to award fees for phases I, II, and III for the

reasons stated by that court. DVCCCA's work during each of these phases contributed to its successful efforts to enforce the consent decree. The district court's findings are not clearly erroneous, and it correctly applied the law.

Phase VI involved plaintiff's successful opposition to the intervention of various Pennsylvania legislators in the underlying action. Defendants also opposed the attempt to intervene. The Commonwealth argues, therefore, that it should not have to pay the fees awarded for work on this phase, and that, if fees are to be awarded, they should be assessed against the proposed intervenors. The district court concluded that the Commonwealth was liable for fees for three reasons: the identity of the legislators was not wholly independent from the identity of the executive; all branches of the Commonwealth were equally bound by the consent decree; and plaintiff's opposition to intervention was necessary for it to protect its rights thereunder.

The Commonwealth's position is not without force, but it is ultimately unpersuasive, because in this context we cannot parse out the roles and responsibilities of various branches of the state government. The intentions of the would-be intervenors were subsequently made clear by their instigation of the litigation leading to the Pennsylvania Supreme Court decision in *Scanlon v. Commonwealth of Pennsylvania,* 502 Pa. 577, 590, 467 A.2d 1108, 1115 (1983), which played a role in retarding implementation of the I/M program. As the district court indicated, plaintiff's work was necessary in its continuing struggle, resisted by various agencies of the Commonwealth at every turn, to implement the

requirements of the consent decree; an award of fees is therefore appropriate.

Finally, the Commonwealth objects to the award of fees for work on phase IX of the litigation. During this phase, DVCCCA submitted an amicus brief in the *Scanlon* litigation in state court in opposition to an attempt by several members of the Pennsylvania General Assembly to prevent implementation of the I/M program; additionally, DVCCCA participated in EPA regulatory proceedings, opposing the Commonwealth's request to modify its state plan to provide for a reduced coverage area for the I/M program.

In regard to the latter portion of the work, the district court properly concluded that, because adoption of the state plan modification would have impaired the rights won by DVCCCA in the consent decree, an award of fees was proper. In regard to DVCCCA's work in state court, the district court concluded that DVCCCA had acted reasonably in deciding that involvement in the state court proceeding was important in vindicating its rights under the consent decree. We agree that the award of fees for this work was proper. By pursuing the battle in the state courts, plaintiff materially aided its position in defense of the consent decree. As with the intervention issue, DVCCCA acted reasonably in refusing to rely on defendants to promote DVCCCA's interests. Plaintiff's amicus brief thus contributed to its ultimately successful efforts to enforce the decree. We will therefore affirm the district court's fee award for phase IX.[7]

## IV. FEES FOR IN–HOUSE COUNSEL

James S. Lanard, who served as Executive Director of DVCCCA from 1978 to

---

7. We note that the Supreme Court recently held in *Webb v. Board of Educ. of Dyer County, Tenn.,* —— U.S. ——, 105 S.Ct. 1923, 85 L.Ed.2d 233 (1985), that fees may be recovered under 42 U.S.C. § 1988 for time spent by counsel pursuing "optional administrative proceedings," *id.* at ——, 105 S.Ct. at 1925, so long as counsel's work "was both useful and of a type ordinarily necessary to advance the ... litigation" to the point where the party prevailed. *Id.* at ——, 105 S.Ct. at 1929. Application of the test is to be left to the discretion of the district court. *Id.*

Assuming *arguendo* that this test applies to counsel fee awards under the Clean Air Act and to time spent by counsel in state judicial as well as administrative proceedings, we conclude that the award of fees was appropriate for all phases in this case. The work by counsel in phase II, which involved informal state administrative proceedings, and in phases VI and IX, which involved state judicial proceedings, was useful and necessary for securing full enforcement of the decree. An award of fees was therefore appropriate under *Webb.*

1982, but who is also a member of the bar of this Court, entered his appearance and actively participated in the litigation in cooperation with DVCCCA's outside counsel, lawyers of the Public Interest Law Center of Philadelphia (PILCOP). The Commonwealth has objected to an award of fees to Lanard on the grounds that, because DVCCCA had outside counsel, Lanard was part of the client group. The district court, noting that Lanard entered an appearance in the litigation, that he was, in fact, the only individual working on many aspects of the case, and that he performed a large part of the activity for which compensation is sought, awarded counsel fees for Lanard's work. We will affirm.

■■■ As an initial matter, we agree with the Commonwealth that in-house counsel is not entitled to a court award of attorneys fees for doing client work, such as furnishing information or documents to outside counsel. However, the record clearly reflects that Lanard's role was in fact that of a lawyer participating in the litigation. Lanard signed pleadings, performed legal research, wrote briefs, prepared for hearings and arguments, participated in proceedings before the district court, and presented oral argument to this Court.

The Commonwealth argues that the relevant rule of law is that which holds a pro se litigant ineligible for attorneys fees. *See, e.g., Pitts v. Vaughn,* 679 F.2d 311 (3d Cir.1982); *Cunningham v. FBI,* 664 F.2d 383 (3d Cir.1981). In *Cunningham,* however, we specifically left open the question presented by this case, i.e., whether a litigant represented by salaried in-house counsel may receive attorneys fees. *Id.* at 385. Moreover, the Commonwealth's position against awarding fees to in-house counsel, in our view, conflicts significantly with the purposes of the citizen suit provisions of the Clean Air Act. A rule against reimbursement of in-house counsel would, by forcing the use of more expensive outside counsel, create a disincentive for any public interest or citizens group contemplating the institution of litigation to benefit the environment. Conversely, a rule in favor of such reimbursement would encourage litigants who seek to enforce the Act. We thus hold that attorneys fees may be awarded for the litigation activity of in-house counsel who has entered an appearance and played an active role in handling the litigation. Accordingly, we will uphold the district court's decision to award fees for the work of Lanard.

The Commonwealth also asserts that an award of fees to DVCCCA for some of Lanard's work would give rise to "double counting." As we have explained above, however, the district court properly and carefully reviewed any possible duplication of effort, noting that Lanard "performed a large part of all the activity for which plaintiff now seeks compensation." The amount of the counsel fee award for Lanard's activities will also be affirmed.

## V. THE HOURLY RATES

In its cross-appeal, plaintiff contends that the district court did not set forth an explanation of its determination of a reasonable hourly rate that allows us to conduct "careful appellate review." *See Ursic v. Bethlehem Mines,* 719 F.2d 670, 675 (3d Cir.1983). Plaintiff asserts that "what little explanation there is suggests that the court gave inadequate attention to the experience and background of several of DVCCCA's attorneys and to the equivalent rates charged by lawyers in private practice."

The "explanation" of which plaintiff complains was given by the district court as follows. In its opinion, the court stated that it had evaluated the "status, reputation and experience of the individual attorneys who performed the [relevant] activity." The court stated that, in its view, $100 was a reasonable average hourly rate [8] for work that it found to be most

---

**8.** Acknowledging that attorneys fees rise over a period of time and that the period covered by the fee petition spanned five years, the court calculated an average rate for each type of work performed during the litigation.

difficult. For work that the court found could have been done by an attorney working at the associate level, an average hourly rate of $65 was applied. For work associated with legal work but which required little or no legal ability, the court granted an average hourly rate of $25.

Plaintiff argues that this "evaluation" was not sufficiently detailed and that the evaluation was not reflected in the hourly rate calculation. Plaintiff asserts that the court ignored the varying experience and expertise of DVCCCA's attorneys and disregarded the salaries earned by private attorneys with similar experience and expertise in equivalent litigation. More specifically, plaintiff complains that attorneys Albert Slap, Michael Churchill, Thomas Gilhool, and Jerome Balter were lawyers of great experience and stature who were entitled to high hourly rates, particularly in this complex and prolonged litigation that involved, in the district court's own estimation, new and novel issues. Plaintiff also points to higher hourly rates awarded to some of these same attorneys by judges of the District Court for the Eastern District of Pennsylvania in other litigation.

The Commonwealth rejoins by pointing to other evidence in the record of rates awarded by courts and charged by Philadelphia law firms in the general range awarded by the district court. The Commonwealth also submits that, to the extent that Gilhool and Churchill were awarded low rates, it was only for performing activities of marginal legal character for which no original legal analysis was required.

■ As an initial matter, we conclude that the district court did not abuse its discretion in fixing hourly rates of $100 for partner level work, $65 for associate level work, and $25 for work of only marginal legal character. We believe, however, that the court's decision to award the lower rates for certain hours presents a more difficult question, especially with respect to a small number of hours of the work of Gilhool and Churchill, both experienced and extremely able counsel. The district court justified its action (awards of $65 and $25 per hour for certain work) on the grounds that the work at issue—even though carried out by such accomplished advocates— was either at the associate level or was mundane or minor in character and that the attorneys were therefore not entitled to their normal rate. In *In re Fine Paper Antitrust Litigation*, 751 F.2d 562 (3d Cir. 1984), we reviewed similar action by a district court, concluding that the district court did not abuse its discretion in reducing the rates for substantial amounts of partner time to associate level. *Id.* at 591–93 ("the court's ruling ... may be set aside only if predicated on clearly erroneous findings of fact or if it is so arbitrary and capricious as to amount to abuse.").[9]

■ We review the district court's action here under the same standard as in *Fine Paper*. Although the question is close, recognizing that the district court had intimate familiarity with the case and that it took great care in scrutinizing the fee petitions, we must defer to the court's conclusion that Balter was directing the litigation and that Gilhool and Churchill's services were, in some instances, either at the associate level or ministerial in character.[10] In sum, we hold that the district court did not abuse its discretion, and thus the court's decisions on hourly rates will be affirmed.

**9.** To the extent that senior attorneys counsel their younger associates as to strategy or evaluate the factual and legal positions of their client, the work of the senior attorneys should be compensated at partner rates. The record in this case, however, provides an insufficient basis for reversing the district court's award of fees on this ground, given the court's detailed knowledge of the case.

**10.** The vast bulk of the work was performed by Balter and Lanard, both inexperienced attor-

neys. Balter was admitted to the bar in 1977 and Lanard in 1978 (when the litigation was already underway) and neither had any prior significant litigation experience. The fees awarded for their work, which constituted the vast bulk of hours involved, were plainly appropriate. A small number of hours were at issue for Slap and Beller, the latter also an inexperienced lawyer. The district court did not abuse its discretion in fixing the hourly rates for each of these attorneys.

## VI. "THE SECOND CHAIR"

Plaintiff appeals the district court's disallowance of time spent by more than one attorney at hearings because "only one attorney spoke on behalf of the DVCCCA." Plaintiff concedes that multiple attendance at hearings may sometimes, or even often, be unnecessary, but asserts that the adoption of a *per se* rule that multiple representation is always unreasonable is arbitrary and incorrect. In plaintiff's view, the court ignored the underlying reasonableness of the common practice of attorneys to have more than one person present.

 The course followed by the district court here was similar to that followed by the district court in *Fine Paper*. In that case we considered the district court's exclusion of fees for representation by more than one attorney at pretrial conferences and affirmed its decision under an abuse of discretion standard. *Id.* at 595. We conclude that the district court in this case carefully examined the need for the "second chair" at particular hearings, and that it did not abuse its discretion in denying fees therefor. We also conclude that denying fees for the "second chair" attorney does not conflict with the Clean Air Act. We will therefore affirm the district court's denial of fees for the "second chair."

## VII. THE MULTIPLIER

We now turn to defendants' contention that the district court erred in making an upward adjustment of the various lodestars. On this point the panel is in agreement as to what constitutes the controlling legal precepts, but divides on the question of application of these precepts to the facts found by the trial judge. Chief Judge Aldisert and Judge Stern affirm the district court; Judge Becker dissents in part for reasons set forth *infra* at note 12.

 The majority believes that this was "the rare case where the fee applicant offer[ed] specific evidence to show that the quality of service rendered was superior to that one reasonably should expect in light of the hourly rates charged and that the success was 'exceptional.'" *Blum v. Stenson*, —— U.S. ——, 104 S.Ct. 1541, 1549, 79 L.Ed.2d 891 (1984). The increase of a lodestar is committed to the sound discretion of the district court, and this court "may not reverse where the trial court employs correct standards and procedures, and makes findings of fact not clearly erroneous." *Lindy Brothers Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 116 (3d Cir. 1976) (in banc) ("*Lindy* II"). The appropriate inquiry, then, is whether in light of *Blum* the district court employed proper standards.

*Blum* involved review of a fee award under 42 U.S.C. § 1983. In that case the district court increased the lodestar by 50 per cent, citing as reasons the complexity of the litigation, the novelty of issues, the high quality of representation, the "'great benefit' to the class, and the 'riskiness' of the law suit." 104 S.Ct. at 1548. The Supreme Court held that this recital of factors was insufficient to justify an upward adjustment of the lodestar. It reasoned that novelty and complexity of issues already are reflected in the lodestar, that only in a "rare case" where the fee appellant offers specific evidence to show the superior nature of the services rendered and success was exceptional should quality of representation justify increasing the lodestar, and no evidence justified an increase based on the number of persons benefitted. *Id.* 104 S.Ct. at 1548–49. As to contingency, the Court noted that the fee applicants did not identify any risks in their affidavits or brief to the district court and therefore an increase in the lodestar on this basis was unjustified. *Id.* The Court expressly left open the question of whether the risk of not being a prevailing party could ever justify a fee increase. *Id.* 104 S.Ct. at 1550 n. 17.

This litigation centers on the Commonwealth's environmental plan, submitted 11 years ago, to conform with federal standards for carbon monoxide and ozone levels in the state's two metropolitan centers, greater Philadelphia and greater Pitts-

burgh. Nine years ago plaintiffs sued the state; two years later the state entered into a consent decree and then proceeded to renege on its provisions. To this day, every branch of government of the Commonwealth of Pennsylvania—the executive, legislative, and judicial—has fought tooth and nail every effort of plaintiff to make Pennsylvania respect the provisions of a federal statute.

It is certainly most unusual, and therefore a rarity, for a state government to have taken such devious formal actions to avoid the enforcement of a federal court order, as it did in this case:

* First, Pennsylvania's legislature enacted a state law deliberately designed to prohibit state officers from respecting the federal court order.

* Second, because the state then stood to lose $700,000 in Clean Air Act funds for state highways in 1982, the legislators repealed the ill-fated legislation, and permitted the implementation of the inspection and maintenance program if necessary to avoid the loss of federal funds. *See DVCCCA v. Commonwealth of Pennsylvania*, 755 F.2d 38 (3d Cir.1985).

* Third, after receiving the federal funds for its highways because of compliance with the federal court order, the Commonwealth, acting through certain state legislators—desiring the financial benefits of federal largesse without intending to satisfy the federal requirements for it—successfully brought an action in its own court system, resulting in a judgment of the Supreme Court of Pennsylvania that called the federal court order "a nullity." *Scanlon v. Commonwealth of Pennsylvania*, 502 Pa. 577, 590, 467 A.2d 1108, 1115 (1983).

Undaunted, the public interest law firm representing the citizen group plaintiff returned to the federal court system and fought the powerful Commonwealth apparatus every inch of the way, through complicated detours and treacherous road blocks.

■ Although the district court described the case as presenting "new and novel issues, the resolution of which had little or no precedent," the court explained that counsel assisted the court in avoiding undue interference with essential elements of state sovereignty. Because this case involved a head on collision between two court systems, plaintiff was treading through a minefield. Nevertheless, plaintiff's counsel performed exceptional services in vindicating the dignity of the federal court system, walking the tight, and sometimes imperceptible, line that divides the competencies of two governmental sovereignties, insuring full compliance with federal legislation designed for the safety and protection of the citizens, and vigorously battling a state governmental system that sought to defy a lawful order of this court system by resorting to discredited concepts of nullification, first by its legislature and next by its supreme court. To the majority, these circumstances are perfectly congruent with the bottom line expressed in *Blum* to satisfy the enhancement of the lodestar ordered by the district court.

The majority rejects the Commonwealth's arguments that the district court here applied standards prohibited by *Blum*. The court increased the lodestars in phases IV, V, and VII of the litigation based upon superior work, outstanding result, and contingency.[11] App. at 49. *Blum* did not foreclose all increases in attorneys fees based on quality of work performed; it recognized that in a "rare case" a district court can justifiably increase a lodestar for "superior work." The district court found that the quality of plaintiff's counsel's work in phase V was "superior" and led to an "outstanding result." This finding is

---

**11.** Work on phase IV became necessary when the Commonwealth attempted during the Spring of 1981 to delay implementation leading to the first appeal to this court. Phase V involved the litigation flowing from the General Assembly's law preventing the expenditure of funds for the I/M program. Finally, phase VII involved litigation over the Commonwealth's proposal that several programs be exempted from the contempt sanction imposed by the district court.

not clearly erroneous. An increase in the lodestar based on this factor is consistent with *Blum.*

The district court also found that the "contingent nature of plaintiffs' success" in phases IV, V, and VII supported an upward adjustment of the lodestar. This finding also is not clearly erroneous. Unlike *Blum,* plaintiff specifically identified the risks inherent in this litigation in its brief to the district court and, although the Supreme Court considers it an open question whether contingency of success can properly justify a lodestar increase, we have resolved the question in this court. *See Hall v. Borough of Roselle,* 747 F.2d 838 (3d Cir.1984); *Lindy II,* 540 F.2d at 117.

The Commonwealth also contends that the district court did not make specific findings of fact in awarding the lodestar increase as required by *Ursic v. Bethlehem Mines,* 719 F.2d 670, 675 (3d Cir.1983) and *Lindy II,* 540 F.2d at 117. The majority rejects this argument. The court expressly found: (1) the plaintiff's success was contingent because of the unusual nature of the litigation and "defendants' numerous attempts to overturn or circumvent this court's orders," app. at 49; and (2) the

quality of plaintiff's counsel's work was superior in phase V due to the complex issues of federalism, 581 F.Supp. at 1431.

Finally, the Commonwealth contends that the district court abused its discretion in awarding such large multipliers. The majority rejects that argument as well. *Lindy II* is dispositive:

> The appellate court may not upset a trial court's exercise of discretion on the basis of a visceral disagreement with the lower court's decision.... "If the district court has applied the correct criteria to the facts of the case, then, it is fair to say that we will defer to its exercise of discretion."

*Lindy II,* 540 F.2d at 116 (quoting *Katz v. Carte Blanche Corp.,* 496 F.2d 747, 756 (3d Cir.1974) (in banc), *cert. denied,* 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed.2d 125 (1974)). Because in awarding the multipliers the district court applied the correct criteria, and because the award was neither " 'so unreasonable [n]or so arbitrary as to amount to a prejudicial abuse of ... discretion,' " *Lindy II,* 540 F.2d at 116 (quoting *Napolitano v. Compania Sud Americana de Vapores,* 421 F.2d 382, 384 (2d Cir. 1970)), defendants' contention must fail.[12]

---

**12.** Judge Becker dissents from the majority's affirmance of the district court's award of a contingency multiplier of two for phases IV and VII of the litigation. The work in phase IV was in opposition to the motion of the Commonwealth to amend a consent decree pursuant to Fed.R.Civ.P. 60(b), and the work in phase VII was its functional equivalent. *See supra* note 11. Judge Becker concludes that in awarding the contingency multiplier the district court failed to consider that the Commonwealth had to meet an extremely heavy burden to gain modification of the consent decree. *See, e.g., DVCCCA v. Commonwealth of Pennsylvania,* 674 F.2d 970, 982 (3d Cir.1982). In light of this burden, Judge Becker believes that the risk of lack of success in these phases was simply insufficient to justify the very substantial multiplier awarded by the district court.

Judge Becker also dissents from the majority's affirmance of the district court's award of a total multiplier of four for phase V of the litigation. He believes that this aspect of the fee award must be vacated and remanded to the district court for reconsideration in light of *Blum v. Stenson,* —— U.S. ——, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). Judge Becker acknowl-

edges that *Blum* did not address the question of how high a multiplier the district court may award and that there are few cases that address this difficult issue. Nevertheless, he believes that because the *Blum* court carefully identified the cases in which fees may be awarded and characterized a 50 percent multiplier as "substantial," *id.* 104 S.Ct. at 1548, *Blum* suggests that in only the rarest case would a total multiplier in the range of four be permitted. Judge Becker concludes that, even assuming an award of quality and contingency multipliers is appropriate as to phase V, the multipliers must be recalculated because the case was not so very rare as to justify in light of *Blum* the award of this extraordinary multiplier. *Cf. New York State Ass'n for Retarded Children v. Carey,* 711 F.2d 1136, 1153–54 (2d Cir.1983) (court considered the case to be "extraordinarily difficult," involving "novel questions of constitutional interpretation," and "equally complex issues concerning the litigation of institutional reform," yet the court reduced a multiplier from the 25 percent level awarded by the district court to 10 percent); *Baughman v. Wilson Freight Forwarding Co.,* 583 F.2d 1208, 1217 (3d Cir.1978) (dis-

The judgment of the district court will be affirmed.

trict court abused its discretion in awarding a multiplier of two to account for contingency).